MERLE C. TEBBETTS, RESPONDENT, v. DAVID P. FUQUA, ED. C. DART AND LESLIE R. BYAM, JR., APPELLANTS.—90 S. W. (2d) 1074.

Kansas City Court of Appeals. January 27, 1936.

*William B. Bostian* for receiver.

*Burrus & Burrus* for appellants.

No brief for respondent.

TRIMBLE, J.—The appeal herein is by defendants, wherein complaint is to secure the setting aside of the appointment of a receiver, but more apparently the vacating of certain orders approving the payment of various items of expense by the receiver particularly mentioned, i. e., the payment of a receiver's fee to himself and the taxing of the court costs of the receivership, and to have the said costs taxed

against the plaintiff instead of being taxed against, and paid out of, the assets of the corporation or parties owning said assets.

The record shows that plaintiff, Merle C. Tebbetts, on June 7, 1933, filed a petition styled "Petition for the Appointment of Receiver of the Walkashow Corporation." (Parenthetically, we may say that at no time was the corporation joined in, or made party to the application or to this suit.) Without notice either to the corporation or to defendants, on said date, an order was made and entered of record *temporarily* restraining defendants, Fuqua, Dart and Byam, Jr., "during the pendency of this action" from "exercising any control over the property of this plaintiff, or in any way interfering with the operation and continuance of the business of the Walkashow Corporation; that Donald H. Latshaw be appointed as receiver, to preserve and conserve the property of this plaintiff and the Walkashow Corporation, and that said receiver immediately take charge of any and all property, books and papers of said company; that said receiver is directed to continue the operation of said property and company, and that he be authorized to employ a manager to operate said company under his direction and account to this court for all sums taken in the operation of said Walkashow Corporation; and that said defendants be required to appear in this court on the 14th day of June, to answer to the complaint of plaintiff and show cause why said temporary injunction and orders should not be made permanent." Thereafter, on perhaps the same day, June 7, 1933 (though the record says June 7, *1934*), between the hours of 6:20 P. M. and 8:10 P. M. defendants were first served with notice of such matters, together with a certified copy of said restraining order to appear in court on the 14th day of June, *1935*, to answer the complaint of plaintiff and show cause why said orders should not be made permanent.

The record shows that on the 8th day of June, 1933, the court ordered, adjudged and decreed that the Standard State Bank, a Missouri corporation, turn over to Donald H. Latshaw, receiver, all funds in said bank belonging to the said Walkashow Corporation; and that on the 9th day of June, 1933, said Latshaw filed bond as receiver in the sum of $2100 with the Central Surety & Insurance Corporation as surety, which was approved by the court.

On June 10, 1933, Latshaw, receiver, showed to the court that on June 7, 1933, the day he was appointed receiver, there was issued certain outstanding and unpaid salary and incidental checks of said corporation amounting to $699.94, as preferred claims, it being represented to the court that "ample funds" were on hand with which to pay same, and the court ordered the receiver to forthwith pay said claims; and on the same day, June 10, 1933, the receiver showed that there were wages due the employees of said corporation "from and

including June 5, 1933, to and including June 7, 1933," and the court ordered them to be paid forthwith.

On the aforesaid day, the 14th of June, 1933, defendants appeared and filed their motion to vacate the order appointing receiver, and to dissolve the temporary restraining order.

On the same day, June 14, 1933, plaintiff filed an amended petition. (It may be well to say that the original, as well as the amended petition, were verified.)

On the 17th day of June, 1933, the following order was entered of record:

"Now on this day this cause coming on for hearing, comes the plaintiff in person and by his attorney, and come the defendants by their attorney, and plaintiff in open court dismissed his amended petition and cause of action; and cause is continued for further hearing until Tuesday morning, at 9:30 A. M."

Thereafter on June 23, 1933, the receiver filed his "first and final report of receiver (the portions not contested and irrelevant are not here set out) showing money he received and disbursements made."

Said first and final report shows receipts amounting to $5476.78, disbursements $4421.18, leaving $1055.60 on hand together with $100 petty cash.

Among disbursements, were listed the following:
June 12,
Harmon L. Eaton, Commission from concessions .........$15.46
June 15,
Merle C. Tebbetts, on account as Manager ............... 25.00
June 19,
Merle C. Tebbetts, on account as Manager ............... 50.00
June 20,
Merle C. Tebbetts, on account as Manager ............... 25.00

On June 23, said report was by the court approved. On June 27, 1933, by leave of court, defendants filed "Objections to receiver's report."

On June 28, 1933, receiver filed a supplemental report, stating that he is entitled to receive from the bookkeeper of said corporation from midnight of June 19, 1933, to the filing of this report, sums estimated to be $800 for the purpose of liquidating unpaid bills incurred by the receiver, as well as compensation for his services, and also court costs incurred. He also listed a fee of $350 to himself as receiver, $22.65 court costs paid to circuit clerk, $50 paid to plaintiff as manager and other items.

On June 16, 1934, defendants filed amended objections to the report of the receiver and to his amended report filed on June 28, 1933, and prayed the court "to vacate and set aside its order, judgment and decree rendered on June 23, 1933, wherein it taxed court

costs and allowances against the assets of *defendants* held in possession of said Latshaw, receiver, and the allowances to the plaintiff Tebbetts, and prayed the court for an order and judgment against the receiver and his official bond for the return and repayment of the sums" of $15.46 to Eaton, $3 to McDermott, $150 paid to Merle C. Tebbetts in five various amounts and $350 for compensation of said receiver, aggregating $518.40. And on the same day, June 16, 1934 (nearly a year after the filing of said report), the court heard said motion and overruled it, the defendants excepting.

And then on the 21st of July, 1934, the court, "*while in vacation*" accepted and approved said report and discharged and released said receiver and the Central Surety & Insurance Corporation, surety on the receiver's bond. Whereupon defendants appealed.

The petition for the appointment of a receiver of said Walkashow Corporation alleged the incorporation thereof and the granting of its charter by the Secretary of State of the State of Missouri.

That *plaintiff* is, and has been engaged in, conducting an "athletic contest" at Fairmount Park in Kansas City, Missouri; has acquired valuable contracts with advertisers, and all contracts necessary for the carrying on of said business including certain concessions and has secured a lease upon said Fairmount Park.

That on or about May 22, 1933, plaintiff and the defendant, Byam, Jr. entered into a contract to promote and incorporate the Walkashow Corporation, Byam, Jr. agreeing to subscribe $1500 of which $900 was to be cash and $600 as a guaranty of electric light service. The capital stock was to be $10,000, of which plaintiff was a subscriber for $7500 and have that for his contracts and lease which he agreed to turn over to the corporation. Byam, Jr. was to have $1500 worth of stock for his interest and one, Fuqua, was to subscribe for $1,000 of stock and pay for it in work and labor done and to be performed. Defendant Ed. C. Dart, another incorporator, was a straw man for defendant Byam, Jr. and to hold his stock in trust; that pursuant to said agreement, on May 23, 1933, Byam, Jr., deposited the $900 in the Standard State Bank of Fairmount and became the guarantor of the light and power bill for $600 and on May 26, 1933, the corporation began business, plaintiff conducting it.

The petition for the appointment of a receiver then alleged that, since the incorporation, defendants have connived to deprive plaintiff of the control of said corporation by attempting to destroy the contract between them; that they have taken the moneys of said corporation from its place of business and placed same beyond his control, and have proceeded to spend said money "without consideration of plaintiff," or the creditors of plaintiff, or the corporation, or its managers; they have demanded that the contract be changed, thereby depriving plaintiff of property rights of great value; have threatened

to take entire charge of the corporation by physical force; that they have employed many men not needed by said corporation with the view of developing an organization to intimidate and harass plaintiff; that for the purpose of further defrauding plaintiff of his property as majority stockholder, defendant Byam, Jr. has exhibited a black jack at said park and place of business, started a fight with an employee and has threatened plaintiff in such a manner as to greatly impair the business of said corporation; that defendants "have threatened to refuse to abide by the contract" and to bring wreck and ruin to the corporation and its business.

It is then alleged that the business of the corporation is *prosperous* and that both the corporation and its predecessor, the plaintiff, have sufficient assets to pay all of its debts; that the conduct of the defendants endangers the interests of all parties; and the interests of the Walkashow Corporation and its creditors are in danger of becoming impaired; that defendants have made threats that they expect to put plaintiff out of the corporation, and not to be governed by their contract with him and to declare he is not the majority stockholder; that the business, both prior to and during the incorporation, has been carried on successfully by plaintiff except for the unlawful interference of defendants; that their continued interference will endanger the credit of both plaintiff and the corporation, and cause irreparable loss to him and his creditors and to the corporation; that it is for the best interest of all parties concerned that a receiver be appointed immediately to take charge of, and continue, the business in an orderly manner and that defendants be prohibited from coming about said place of business to the disadvantage of plaintiff and his creditors and the said corporation.

The petition then concluded with the prayer hereinabove stated. The amended petition is similar to the original petition except that it goes into greater detail as to the contracts owned by plaintiff, which are alleged to be far in excess of the $7500 block of stock subscribed by him, and recites further details concerning the contract between plaintiff and defendants, touching the amount of stock to be owned by each. It alleges that the business is and will be prosperous, but that the conduct of defendants will bring immediate ruin to the corporation; and it recites that the corporation has insufficient money at this time to pay all debts now due and payable, but if the property be managed without unlawful interference of defendants, its assets will develop sufficient moneys to pay all of its debts in full, and realize a profit to the parties interested. It is also alleged that the defendants have stolen plaintiff's copy of the contract between them.

The prayer of the amended petition closed with a prayer substantially the same as the prayer of the original petition.

It will be observed that no notice of the application for the ap-

pointment of "receiver, or of the appointment thereof, or of the restraining order, was ever given to the corporation; nor was any notice given to the defendants until after those orders were made, and then the defendants were notified to appear on the 14th day of June, 1935, to show cause why the order should not be made; that the defendants appeared on that day and filed their motion to vacate and set aside said orders. This motion was never heard or ruled on, evidently because, three days later, namely, June 17, 1933, "plaintiff in open court *dismissed his amended petition and cause of action*" and yet the cause was continued for further hearing until some undesignated Tuesday morning. But notwithstanding such dismissal, as heretofore stated, the receiver continued to operate the property until he filed a final report on June 23, 1933, and, indeed, until he filed a supplemental final report on June 28, 1933, when he was discharged. Defendants filed objections to these reports, and, when overruled, took the appeal to this court.

The petition and application for the appointment of a receiver has been set forth at, perhaps, needless length. This was done for the reason, however, that defendants urge that it did not plead sufficient facts to authorize the appointment of a receiver, and they say the appointment was made without notice, and was wrongful, unauthorized and void. It is true, the order for a temporary receiver was made before any notice was actually given, but a notice was ordered and served on them late on the same day, to answer June 14, and show cause why the orders should not be made permanent. They did appear on June 14 and filed motion to dissolve temporary restraining order and to vacate the order appointing receiver. But it seems that these motions were never called up nor acted upon. If defendants wanted to get rid of the receiver or thought his appointment to be unnecessary and wrongful, they should have called up their motions, and have had the court to act upon them, but nothing was done, not even when an amended petition was filed asking, not only for the appointment of a receiver, but for supervision and direction as to the calling of an election of directors and officers, and to establish and fix the terms of contracts. It is manifest that the business was conducted before the corporation's charter was obtained, and after that, the corporation was never organized, nor anything done to attack the receivership, except to file the double-headed motion, or as it is hereinabove called, motions, and the matter was allowed to stand as it was. It is also true that three days later plaintiff, on the 17th of June, seems to have dismissed the amended petition and cause of action, but in the record of this apparent entry of dismissal, the cause is continued for further hearing; and at the making of this order, all parties were appearing. Nothing, however, seems to have been done except to allow the receiver to proceed to manage the business he had in charge,

to collect the sums due it and to pay expenses, and make a report on June 23, 1933, only a few of the disbursements were contested by defendants by objections, which, however, were not filed until after the report had been approved by the court. And when the receiver on June 28, 1933, filed a supplemental report wherein, among other expenses incurred and paid were asked to be approved, he asked for an allowance of $350 as his fee, and that, after the costs are paid, he and his surety be discharged and released. Thereafter, on June 16, *1934*, the defendants filed amended objections attacking the validity of the appointment of the receiver and objecting to the approval of the allowance of his fee and a few other disbursements paid out as expenses of the receivership, including the court costs thereof; and, when the court overruled their objections, the defendants then followed up their objections and appealed.

No doubt, the appointment of a receiver is not an independent remedy, nor does it *alone* constitute a cause of action, 53 C. J. 22; and the power to appoint a receiver is said to be a delicate one, jealously guarded, reluctantly exercised, and done so with caution and circumspection, 53 C. J. 32, 33. And in certain cases of *urgency* or as sometimes termed, "crying necessity" the appointment may be made without prior notice. [State ex rel. v. Southern, J., 51 S. W. (2d) 121; State ex rel. v. Mulloy, J., 329 Mo. 1.] The petition or application for receiver, in the case at bar, alleged many things as to the damages threatened and impending; and under the circumstances of this case, it is not incumbent on us to look at the record under a microscope or with a technical eye, in order to find, if possible, a reason to declare void the appointment of the receiver. In the first place, the defendants had notice and opportunity to apply to the court to vacate what it did, and had this opportunity on the 8th of June, for though the notice named the 14th of June, they could have come in the next day after the notice and given the court an opportunity to vacate its appointment. They did not choose to do this either on the 8th or the 14th. They merely filed a motion to vacate and dissolve, and let it go at that. The business of the parties owning the enterprise was being conducted before the corporation was created, and was conducted in the same way afterward, as hereinbefore stated. The defendants made no attempt to present, or have enforced, their claims of invalidity of what was done, but allowed the receiver to be appointed and continue the work of carrying on the business, defendants being apparently satisfied therewith, until the receiver informed the court that the work was finished; that there was money now on hand to pay all expenses and something of a surplus besides; and then asked for his discharge, and that he be paid for his work out of said assets; then it was that their opposition became active. What plaintiff did, in his so-called attempt at dismissal, did not become

effective, for the cause was continued with the knowledge of· all parties. The court did not make any order of dismissal, and the whole matter went along as it had before. It certainly did not operate to discharge the receiver who was still under the duty of holding and conserving the property and making an accounting to the court and then receiving his discharge after his final report was approved and he paid for his work. It is really the rights of the receiver that are involved in this appeal and he alone filed a brief in his behalf. [53 C. J., sec. 107, pp. 88-89.]

In our view the judgment should be affirmed. It is so ordered. All concur.